IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2004

## RONNIE SIMPSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P 24994     Joseph B. Dailey, Judge**

_____

**No. W2003-02400-CCA-R3-PC  - Filed August 11, 2004**
_____

The Appellant, Ronnie Simpson, appeals from the Shelby County Criminal Court's dismissal of his petition for post-conviction relief.  Pursuant to a negotiated plea agreement, Simpson pled guilty to especially aggravated robbery and aggravated burglary and received an effective fifteen-year sentence.  On appeal, Simpson challenges the validity of his guilty plea upon grounds of: (1) voluntariness and (2) ineffective assistance of counsel.  Following a review of the record, we affirm the judgment of the post-conviction court dismissing the petition.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

James M. Gulley, Memphis, Tennessee, Attorney for the Appellant, Ronnie Simpson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

At approximately 4:31 a.m. on August 13, 1999,

Officers Sanders and Curry of the Memphis Police Department responded to a burglary of a residence call at 1290 Grand.  Upon arrival the officers noticed the front living room window to be completely shattered.  As the officers began to search the home the [Appellant] was found to be hiding in the bedroom closet.  He was immediately taken into [custody].  The [Appellant] was searched and it was found that the [Appellant] had a small .32 caliber handgun in his back pocket.  The

[Appellant] had completely ransacked the house[.] . . . He did not have permission to be in this residence which belonged to Efram Smith.

On October 31, 2000, a Shelby County grand jury indicted the Appellant for aggravated burglary, a class C felony.[1]

At approximately 8:35 a.m. on April 30, 2000, the victim, Robert Stewart,

was asleep in his girl friend's car, a 1992 Pontiac . . . on a parking lot of 2285 Pendleton. . . . This being also in the Pendleton Pines Apartment[s] in Memphis, Shelby County. A male armed with a pistol approached Mr. Stewart, struck Mr. Stewart in the head with the pistol and fired three shots at Stewart at pointblank range. The male then pulled Mr. Stewart out of his car and beat him about the head again. The male then took his '92 Pontiac Grand Am and left the scene, leaving Mr. Stewart bleeding in the parking lot. The gunman had shot Mr. Stewart in the stomach, side, and foot. Mr. Stewart was taken to the hospital and had to undergo extensive surgery. On Thursday, May 4th of the year 2000, [the Appellant] was arrested at South Parkway and Elvis Presley after [he] was observed by uniform officers, driving the 1992 Pontiac Grand Am taken in the robbery. He matched the description of the suspect in the case and he was also positively identified [in a photo line-up] as being the person who robbed and shot Mr. Robert Stewart.

The Appellant was indicted on January 9, 2001, for especially aggravated robbery, a class A felony.

On January 29, 2001, the Appellant pled guilty to both crimes as charged. In exchange for his pleas of guilty, he received concurrent terms,[2] as a Range I standard offender, of fifteen years for his especially aggravated robbery conviction and three years for his aggravated burglary conviction.

The Appellant filed a *pro se* petition for post-conviction relief on May 1, 2001, wherein he alleged that he was denied the effective assistance of counsel and that his pleas were not knowingly, intelligently, and voluntarily entered. Following the appointment of counsel, an amended petition was filed, and an evidentiary hearing was held on May 12, 2003. Thereafter, the post-conviction court dismissed the Appellant's petition by written order entered September 8, 2003. This timely appeal followed.

---

[1]Previously, the case had been dismissed at the general sessions court level for lack of prosecution, and the Appellant was released from custody. The case was dismissed because the victims were not present at the preliminary hearing due to "some valid reason[.]"

[2]The Appellant was eligible for concurrent sentencing because the aggravated burglary charged was dismissed by the general sessions court and, therefore, he was not on bail at the time he committed the offense of especially aggravated robbery. *See* Tenn. R. Crim. P 32(c)(3)(C).

## ANALYSIS

In order to succeed on a post-conviction claim, the Appellant bears the burden of showing, by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-110(f) (2003). The Appellant's claim of ineffectiveness of counsel and involuntariness of his guilty pleas stem from the following allegations:

> (1) Trial counsel failed to fully explain the nature of the charges, the evidence which would be used against him if he proceeded to trial, and that his sentence for especially aggravated robbery was required to be served at 100%; and

> (2) Trial counsel did not adequately research his mental background, and his lack of mental capacity and illiteracy precluded him from making a knowing waiver of his rights; and

> (3) He was coerced by trial counsel and the trial court into pleading guilty.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court held that, "the standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant ." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (citing *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys

in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the Appellant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S. Ct. at 370; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## I. Failure to Advise

First, the Appellant argues that trial counsel (1) failed to inform him of the elements of the offenses of aggravated burglary and especially aggravated robbery, (2) did not adequately advise him of the evidence to be presented against him at a trial in this matter, and (3) failed to explain that his sentence for especially aggravated robbery would be served at 100% due to his classification as a violent offender. The post-conviction court concluded that the Appellant received the competent assistance of counsel and, consequently, entered his plea knowingly and voluntarily, finding that:

> [Trial counsel's] sworn testimony and all of the records in the file completely and totally contradict the [Appellant's] assertions. [Trial counsel] represented [the Appellant] in an outstanding manner, meeting with him numerous times, providing him with discovery (even to the point of reading the discovery to him when he refused to accept it); explaining thoroughly the nature of the guilty plea that he entered, and representing her client well in every other regard. The guilty plea transcript and the other documents submitted at the time the plea was entered bear out the testimony of [trial counsel] and contradict the assertion of the [Appellant]. It is this Court's opinion that [trial counsel] did an outstanding job in representing her client in this case and that her representation clearly met the standards set forth in *Baxter v. Rose*, 523 S.W.2d 930 (1975) and subsequent cases.

The proof does not preponderate against these findings. At the post-conviction hearing, trial counsel testified that she (1) thoroughly explained the nature of the crimes for which the Appellant was charged, (2) read the discovery materials to the Appellant "verbatim" after he refused to accept them, (3) informed the Appellant that the victim of the especially aggravated robbery identified him in a photo line-up, and the Appellant was present at the preliminary hearing when the victim

identified him as the assailant, and (4) explained to the Appellant that the law required his sentence for the especially aggravated robbery conviction to be served at 100%. The post-conviction court obviously credited trial counsel's testimony. Because we do not revisit the issue of credibility on appeal, we defer to the post-conviction court's ruling in that regard. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

Accordingly, we find that the Appellant has not proven by clear and convincing evidence that trial counsel's performance was outside the range of competence demanded of attorneys in criminal cases. The Appellant certainly has failed to show evidence that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." In sum, the Appellant has failed to establish these claims.

## II. Mental Capacity

Second, the Appellant argues that trial counsel did not adequately investigate his mental background and that, due to his diminished mental capacity and illiteracy, he was precluded him from making a knowing waiver of his rights. We disagree.

Trial counsel testified that a mental health evaluation was performed by the Memphis Mental Health Institute. As a result of this evaluation, a letter was admitted into evidence at the guilty plea hearing, which showed that the Appellant was competent. Prior to beginning the guilty plea hearing, trial counsel stated to the court there had "been a couple of mental evaluations" performed and all had "come back competent." At the post-conviction hearing, trial counsel stated that, after the Appellant was evaluated, "the doctors informed me that they found that he wasn't mentally retarded but he just had a low IQ but in any event he was trying to manipulate the system because of deficiencies he had." Other than his allegation, the Appellant offers no proof of diminished mental capacity. Accordingly, the Appellant has failed to prove that trial counsel was deficient in this regard. Moreover, the record indicates that the trial court questioned the Appellant extensively as to whether his plea was made with knowledge and understanding. This issue is without merit.

## III. Coercion to Plead Guilty

Finally, the Appellant contends that his plea was involuntary because trial counsel and the trial court coerced him into pleading guilty. Specifically, the Appellant contends that trial counsel was "hollering out loud you need to take this because if you don't, the judge going to sentence you to 60 years." With regard to coercion by the trial court, he submits that the "judge told me if I didn't sign for the 15 years at a hundred percent, he was going to give me 60 years so I didn't have no choice[.]"

In thoroughly explaining to the Appellant the consequences of his guilty pleas, the trial court stated that the offense of especially aggravated robbery carried a sentencing range of fifteen to sixty years. This is the only time sixty years is mentioned by the trial court during the entire guilty plea hearing. At the post-conviction hearing, trial counsel testified that she did not force the Appellant

to take the plea and did not recall hollering at him. The post-conviction court obviously credited trial counsel's testimony that she did not place undue influence upon the Appellant to plead guilty. Again, because we do not revisit the issue of credibility on appeal, we defer to the post-conviction court's ruling in that regard. *Black*, 794 S.W.2d at 755. We conclude that the record fully supports the findings of the post-conviction court that the Appellant has not proven by clear and convincing evidence that his guilty pleas were involuntarily made. Therefore, this issue is without merit.

## CONCLUSION

Based upon the foregoing, we conclude that the post-conviction court did not err in ruling that the Appellant's pleas were knowingly, intelligently, and voluntarily entered or that he received the effective assistance of counsel. Accordingly, the judgment of the post-conviction court is affirmed.

_____
DAVID G. HAYES, JUDGE